**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 30, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

---

BRENT LEE RHODES, an individual,

    Plaintiff - Appellant,

v.

SOUTHERN NAZARENE
UNIVERSITY, a not-for-profit
corporation,

    Defendant - Appellee.

No. 13-6051
(D.C. No. 5:11-CV-00071-F)
(W.D. Okla.)

---

### ORDER AND JUDGMENT[*]

---

Before **LUCERO** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

    Brett L. Rhodes appeals pro se the district court's grant of summary judgment to Southern Nazarene University ("SNU") on his claims brought pursuant to Title III

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and the Oklahoma Anti-Discrimination Act (OADA).[1] We affirm.

## I.  BACKGROUND

Mr. Rhodes was involved in a car accident that left him with substantial physical and mental disabilities. After some time had passed since the accident, Mr. Rhodes enrolled at SNU, initially to pursue a bachelor's degree in nursing. Before classes began, he submitted to the school an application for disability accommodation, on which he requested extended time on exams and assignments, a note taker, and to receive his class syllabi in advance. He also submitted supporting medical documents such as a neuropsychological evaluation, a summary of his condition, and previous requests for accommodation from other colleges.

SNU's disability policy provides that eligibility for accommodation is dependent on the nature of the disability. The school requires supporting documentation as proof of disability and to help determine eligibility for requested accommodations. Ultimately, eligibility is decided by the school's disability services director, Erin Toler. In Mr. Rhodes' case, SNU agreed to—and did—provide extended time on assignments when requested, use of a tape recorder in class, a copy of syllabi prior to the start of classes at the professors' discretion, and access to the

---

[1] Mr. Rhodes' OADA claims are co-extensive with his RA claims. Thus, all references to his RA claims necessarily encompass his OADA claims and as such, only the RA will be referenced in this order for the sake of simplicity.

Paper Resources Center, which provides personal academic support. SNU also encouraged Mr. Rhodes to use preferential seating and to attend study sessions.

Mr. Rhodes' relationship with SNU quickly deteriorated, however, because he became dissatisfied with the accommodations made for him and believed he was entitled to more. For one, Mr. Rhodes sought to receive his textbooks on CDs, but Ms. Toler informed him that his medical documentation did not support such accommodation and the school would need proof that electronic books would benefit him. Nearly a year after his initial request, Mr. Rhodes provided the school with a medical evaluation recommending the usefulness of books on CD and his request was granted shortly thereafter.

Mr. Rhodes also requested that he receive syllabi, assignments, and his textbooks six weeks in advance of classes, but SNU did not grant the request. The school noted that syllabi are often unknown that far in advance and, in any event, Mr. Rhodes' supporting documentation said nothing about the need to have the materials six weeks in advance. During his time at SNU, the school secured Mr. Rhodes syllabi in advance twice—for the other five classes, he received a syllabus at the same time as the rest of the class or, in one case, when he entered the class late.

Mr. Rhodes additionally complained to the school that grading allowances should be made to adjust for his difficulty with spelling and grammar. The school provided him access to an electronic dictionary and suggested he use a laptop but did

not provide him a different grading scale.  Furthermore, Mr. Rhodes' access to the Paper Resource Center was lost after he transferred out of the nursing program into a non-traditional program.  The Paper Resource Center is available only to students in traditional undergraduate programs according to SNU policy.

Lastly, Mr. Rhodes became upset with the amount of assistance he received from professors.  Although he received good grades by virtually any measure during his time at SNU, he alleges several professors did not provide adequate support.  His frustration on this point culminated in the spring of 2009 with one teacher in particular, Professor Long.  Believing he was being treated unfairly, Mr. Rhodes had many email communications with Professor Long.  Eventually, Professor Long sought the assistance of Ms. Toler.  Professor Long reported that she felt threatened by the content of Mr. Rhodes' communications, which included references to a lawsuit against a different university and in a journal entry, a reference to guns in his home.  After Ms. Toler intervened, Mr. Rhodes began sending her a flood of emails over the course of one day—most sent minutes apart from each other—containing lengthy, agitated, and threatening content.

After learning of the email communications, SNU's vice president for student development placed Mr. Rhodes on emergency suspension because he determined the emails could be construed as attempts to threaten, intimidate, and harass.  At a subsequent school judicial hearing, the school found Mr. Rhodes had violated several school policies and he was placed on disciplinary probation.  For the length of his

probation, Mr. Rhodes was required to speak with professors and staff before enrolling in classes and had limitations placed on his communications with staff. Mr. Rhodes was, however, allowed to return to class immediately. The school denied Mr. Rhodes' appeals.

Mr. Rhodes then filed a charge of discrimination with the U.S. Department of Education's Office of Civil Rights, which investigated Mr. Rhodes' claims. The agency and the school thereafter entered into a resolution agreement. Under the agreement, SNU lifted Mr. Rhodes' probation and put him in good standing. The school complied with all of the agreement's dictates and the agency considered the matter was resolved. However, Mr. Rhodes never re-enrolled at SNU.

Mr. Rhodes filed suit in federal court claiming that SNU discriminated against him for his disabilities, failed to provide reasonable accommodation as required by law, and retaliated against him. Following discovery, SNU moved for summary judgment, which the district court granted. The court found that the only relief available to Mr. Rhodes under the ADA was equitable relief, but because there was no present live controversy, that claim was moot.[2] The court also found that to the extent emotional distress damages were recoverable under the RA, Mr. Rhodes could not recover such damages in this case because the record did not disclose any intentional discrimination on the part of the school. *See Sheely v. MRI Radiology*

---

[2] For the same reason, the court determined that Mr. Rhodes' claim for equitable relief under the RA was also moot.

*Network, P.A.*, 505 F.3d 1173, 1198 (11th Cir. 2007) (compensatory damages under § 504 are available for intentional discrimination). Finally, the court made alternative rulings that all of Mr. Rhodes' claims based on events occurring prior to January 21, 2009, were time-barred, and that he had additionally failed to produce evidence to survive judgment on his reasonable accommodation and retaliation claims. Mr. Rhodes now appeals.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Mr. Rhodes. *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012). A party is entitled to summary judgment if it demonstrates through pleadings, depositions, answers to interrogatories, admissions on file, or affidavits, that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a), (c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). While we construe pro se pleadings liberally, "we do not assume the role of advocate." *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (internal quotation marks omitted).

To begin, we note that Mr. Rhodes' appellate briefing consists primarily of alleged factual disputes, most of which were not raised in the district court, and otherwise consists of unfounded allegations of fraud—namely, doctored discovery files—on the part of SNU (which also could have been, but were not, raised in the

district court). We reject Mr. Rhodes' arguments that rely on evidence neither presented to the district court during summary judgment proceedings nor shown to have been unavailable to Mr. Rhodes at that time. *See, e.g.*, *VBF, Inc. v. Chubb Grp. of Ins. Cos.*, 263 F.3d 1226, 1229 n.2 (10th Cir. 2001) (a party cannot seek to have a grant of summary judgment reversed based on facts not presented to the district court). We now take each issue in turn.

### A. Equitable Relief

Mr. Rhodes contends that he is entitled to equitable relief under the ADA and RA. He asserts the district court erred in ruling his claims for equitable relief were moot because it was not his choice to not return to SNU; rather, he asserts he was forced by circumstances the school set in motion to not return against his wishes. This argument, however, does not address the fact that Mr. Rhodes has no intention of *ever* returning to SNU. "It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed." *United States v. Juvenile Male*, 131 S. Ct. 2860, 2864 (2011) (per curiam) (internal quotation marks omitted). And "[t]he hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). In other words, the relief sought must have some effect in the real world. *Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1266 (10th Cir. 1999).

Here, it is without dispute that Mr. Rhodes has not attended SNU since his emergency suspension in 2009 and, by the time this litigation commenced, had no intention of returning to the school despite being in good standing. *See* Aplee. Supp. App. Vol. III at 1132, 1245. Because he no longer intends to ever attend SNU, Mr. Rhodes is not susceptible to continued injury. As such, there is no current dispute presented that is "definite, concrete, and *amenable to specific relief*," as required by law. *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (internal quotation marks omitted). Accordingly, the district court did not err in dismissing Mr. Rhodes' claims for equitable relief as moot.

### B. Emotional Distress

Mr. Rhodes also argues the district court erred when it ruled that emotional distress damages under the ADA and RA are not recoverable. We can dismiss at the outset Mr. Rhodes' contention about the ADA because he brought his claims under Title III of that Act, which provides for only injunctive relief and not compensatory damages. *See* 42 U.S.C. § 12188(a)(1); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages."). As to the RA, this court has not ruled whether emotional distress damages are available under § 504 of the RA. But we have no occasion to do so here, because even if this court did determine that emotional damages are available under § 504, such damages would only be available in cases of intentional discrimination.

*See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 74 (1992) (remedies are limited under Spending Clause statutes [like the RA] "when the alleged violation was *unintentional*"); *see also Sheely*, 505 F.3d at 1198.

Here, nothing in the record supports Mr. Rhodes' allegations of intentional discrimination. Each time the school denied an accommodation request it was because Mr. Rhodes did not provide supporting medical documentation; when he did provide documentation supporting a particular request, SNU quickly granted it. In sum, as the district court correctly noted, Mr. Rhodes did not identify a single accommodation to which he was entitled but denied. The district court did not err when it determined he could not recover emotional distress damages.

## C. Alternate Grounds

We also discern no error in the district court's alternate grounds for granting summary judgment. To the extent Mr. Rhodes' claims are based on events that occurred before January 21, 2009—and many, though not all, are—such claims are time-barred by Oklahoma's two-year statute of limitations. *See* OKLA. STAT. ANN. tit. 12, § 95(3) (2009). Mr. Rhodes did not bring his lawsuit until January 21, 2011, and his contention that he was not aware of the school's failure to accommodate him until May 2009 is undermined by voluminous record evidence.

Further, as noted above, Mr. Rhodes failed to produce evidence that he was denied reasonable accommodations to which he was entitled and thus summary judgment was appropriate on his failure-to-accommodate claim. *See Mershon v.*

*St. Louis Univ.*, 442 F.3d 1069, 1076 (8th Cir. 2006) (a plaintiff alleging a failure-to-accommodate claim must establish, among other elements, that the defendant failed to make reasonable modifications to accommodate the plaintiff's disabilities). Mr. Rhodes argues that when a doctor is unaware of the specific accommodations a school can provide and hence gives the school only a summary of the patient's conditions, the school should contact the doctor to clarify whether the patient qualifies for a particular accommodation request if it is not clear. But Mr. Rhodes had the initial burden to establish that his requests were facially reasonable, *see Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1264 (10th Cir. 2009), and the record evidence suggests that many were not. For example, his requests for receiving syllabi and course materials six weeks in advance of the class beginning were not reasonable considering that each course module was five weeks long. This meant that in order for SNU to accommodate Mr. Rhodes' request, the school would have to know the course syllabus and possess the course materials before the *previous* module even began.

Nevertheless, to the extent that Mr. Rhodes' requests were reasonable, the evidence demonstrates the school reasonably accommodated such requests. For instance, the school provided Mr. Rhodes visual aids and course materials in advance when they were available. And although the school did not grant his request for a note taker—a request for which there was no specific medical support—it offered

Mr. Rhodes the right to record classes on a tape recorder. In short, Mr. Rhodes does not identify a single reasonable request that SNU did not reasonably accommodate.

Finally, in contrast to the evidence SNU provided that its disciplinary decisions were justified due to Mr. Rhodes' frantic and at times aggressive communications, Mr. Rhodes failed to provide any evidence that SNU's reasons for suspending him and putting him on probation were merely pretext for discrimination. *See Mershon*, 442 F.3d at 1074 (retaliation claim requires showing that the defendant's stated reasons for its actions were pretextual). SNU admitted only that it found no evidence that Mr. Rhodes *directly* or *overtly* attempted to threaten faculty; the school has always maintained that he still violated the school conduct code for harassment and creating disturbances, which the record supports. Therefore, the district court did not err in granting summary judgment on Mr. Rhodes' retaliation claim.

The judgment of the district court is affirmed. Mr. Rhodes' motions to supplement the record, to appoint him an attorney, and for a court subpoena are denied.

                                                  Entered for the Court

                                                  Wade Brorby
                                                  Senior Circuit Judge